For the appellant, you may proceed. Good morning. May it please the Court. My name is Cynthia Smith, and I represent the dependent appellant Curtis Kohl. Mr. Kohl has raised two issues before this Court. First, that there was insufficient evidence or insufficient evidence to support the jury's verdict on Count 1 of the indictment because the United States assumed the burden of proving at least 500 grams of a controlled substance, and the jury specifically found that Mr. Kohl did not possess at least 500 grams of a controlled substance. Counsel, is that issue controlled by the United States v. Tolliver, or are there, in your view, distinctions between this case and that one? Your Honor, I'm sorry. I am not familiar with that case, and I apologize. But I know the United States has argued that U.S. Thomas controls this case. What is different about this case is that in Thomas, the defendant pled guilty, and the United States tried to make that confession a confession to what was charged in the indictment. This case is different in that Mr. Kohl went to trial, and the United States charged more than 500 grams in the indictment. And more importantly, the United States submitted an instruction, which was given by the Court, and that's shown on page 7 of the defendant's excerpts of record. At the end of the first full paragraph, the instruction states, in order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt. First, that beginning on a date unknown prior to April 29, 2004, and as far back as June 2003 through April 29, 2004, and I can skip forward, but it says the defendant, Curtis Leroy Kohl, knowingly possessed at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine and cocaine. So by submitting this instruction, which was given to the jury, the United States actually assumed the burden of proving that amount. They made it an element of the crime. And the jury … Well, Tolliver says that it isn't an element of the crime, but the potential difference between the two cases, potential, I say, is that in Tolliver, the jury could not reach a determination at all with respect to drug quantity, and it would appear to me that here the jury affirmatively found that he was not guilty of the 500 grams. And I wonder what, if anything, we should make of that difference. And I'd actually like both counsel to address that question. Well, Your Honor, the difference in this case is that the United States assumed the burden of proving at least 500 grams. That's how it works. Well, Tolliver says that doesn't matter. That's my concern with your argument. At least that's how I read it. Well, Your Honor, the difference I would argue in this case is that the jury was instructed by the court that in order to find Mr. Cole guilty on Count 1 of the indictment, it specifically had to find that he possessed more than 500 grams of a controlled substance. The second question that was submitted to the jury was, did Mr. Cole possess more than 500 grams? And the jury answered no. The United States framed the charge, and then the court instructed the jury that in order to find him guilty, they had to find at least 500 grams. And they expressly did not do so. There was insufficient evidence to support the jury's verdict on Count 1 of the indictment. And for that reason, that conviction must be reversed. His conviction on Count 2 must also be reversed because it's dependent upon a conviction under Count 1. The second issue that Mr. Cole raises is that it was an abuse of discretion for the court to use unreliable evidence in determining the drug amount. Counsel, are you familiar with the Little Son case that is now going to be before the United States Supreme Court? No, Your Honor. I apologize. I'm not familiar with that case either. My question, again, to both counsel is whether it would be appropriate or desirable for our panel to wait for the Supreme Court's decision in that case before deciding your second issue. Mr. Cole certainly would agree to waiting for that, Your Honor. We'd appreciate the opportunity to brief a response to whatever the ultimate decision is. Our argument in this case as to the abuse of discretion, in our brief, we argued that there was an ex post facto analysis that had to be applied. Even if that ex post facto analysis does not apply, it was still an abuse of discretion under this Court's reasoning in the second Ammaline case, where this Court said that the district court may not rely simply on factual allegations in the pre-sentence report to determine the drug amount. Mr. Cole objected to the use of these unreliable hearsay statements. The probation office recommended that the Court determine the drug amount based on law enforcement summaries of their interviews with Vernon Anderson and Dominic Shears. Neither man testified at trial. Neither man testified at the sentencing hearing. There were no witnesses presented on the government's behalf at the sentencing hearing, even though Mr. Cole had raised an objection to the reliability of that evidence. The only evidence before the Court of the drug amount was the testimony of Mr. Cole, who said under oath that he bought the drugs for personal use. The informant, whom the jury did not believe, because the jury did not find the amount of drugs that she proposed. So instead, the Court relied on these double hearsay statements. We didn't even have the testimony of the officers who heard those statements and reported in their summaries. Well, now, as a matter of pragmatic practicality, didn't the judge give a break to the defendant in this case, in terms of the actual sentence and in terms of what he actually found? Your Honor, it's true that he did sentence Mr. Cole at the low end of the advisory guidelines. And he did not take the full word of the informant who testified at trial. But really, he could not do so, because the jury did not believe that informant. That informant testified that she had sold Mr. Cole pounds and pounds of methamphetamine and cocaine. And the jury expressly found that that was not true. There was no finding of amount by the jury, no distribution amount admitted by Mr. Cole. And so what the Court was left with was a measurable amount only. And in order to go beyond that, the Court should have used reliable evidence to determine the drug amount. And factual statements in the pre-sentence report this Court has found are not sufficient under the second Ameline case. I'd like to reserve the rest of my time. You may do so, Counsel. Thank you, Your Honor. We will now hear from Counsel for the Government. Thank you, Your Honor. May it please the Court, my name is Josh VanWetter, and I'm Assistant United States Attorney in Missoula, appearing on behalf of the United States. And I'd like to thank the Court for allowing me to appear by video in this case. With respect to the specific questions before us, and I'm sorry that I did not see the members of the Court while Ms. Smith was speaking, so I'm not sure exactly who asked questions. I think it was Judge Graber. With respect to the first question, what, if anything, does the fact of trial mean in comparison to Tolliver or Thomas, the United States would submit that it makes no difference whatsoever. The fact that you've gone to trial does not change the elements of the case. Indeed, the United States cannot change or create elements of a charge simply by the nature of its charging document. Apprendi requires that the United States allege drug amounts that are going to boost the defendant into a higher category. The United States has done exactly that. Defendant here would suggest that by following Apprendi, we've somehow created an additional element, or perhaps by- Counsel, here's my specific question about the distinction or application of Tolliver. In Tolliver, the jury apparently, as I read the case, simply couldn't decide on an amount. They just didn't decide it. In this case, the jury was asked specifically, was he responsible for 500 grams or more? And they said no. They answered the question in the affirmative. And in Tolliver, what the panel said was that although the government failed to prove any of the specific drug quantities, the defendants, I'm leaving out some things, the defendants were not entitled to a judgment of acquittal. Rather, the district court was restricted in the maximum sentence that it could impose. And that's the part that I'd like you to address. It's sort of a two-part question. Does it make any difference that in this case the jury affirmatively said no, it was not more than 500? And secondly, is the part of Tolliver applicable that says that the sentence is now restricted? I would suggest, Your Honor, that this case is exactly like Tolliver and that the court is restricted in the maximum sentence it could bring. That is, because the jury found that the United States had not proven 500 grams beyond a reasonable doubt, the court was restricted to a maximum sentence of 20 years, the maximum sentence for methamphetamine distribution without reference to drug amount. And, of course, Mr. Cole was sentenced within that range. So Tolliver would apply but not affect the sentence in this case. And with respect to whether or not it matters, the difference between the jury deciding that there is not 500 grams versus not deciding, I would suggest that there's no difference there either. Essentially, it's a question of proof. Has the government met its burden? And whether the jury can't decide that the government's met its burden or concludes affirmatively that the government has not met its burden, I believe the result is the same. The government hasn't met that. Because in your view, in the view of Tolliver, it's not an element even if it's been indicted. Exactly correct, Your Honor. With respect to the next argument then, whether or not it's appropriate to wait for a decision before, in a case that's before the United States Supreme Court. Actually, counsel, that was my mistake, which judges can just point it out. It's too early in the morning for me to think straight. But that's actually a Ninth Circuit case, not a Supreme Court case. But it does raise a similar issue. And I'm sorry that I'm not familiar with that case either. But in here, I think the court has, without knowing that case, I think the court has plenty before it to make the decision. Here, I don't think there's any question that this court has held that there's no ex post facto problem, the Dupas case, in exactly the arguments that Mr. Cole has raised. And so that precedent seems to me to be binding to go to exactly the arguments Mr. Cole makes with respect to Booker, that if you're going to take any of it, you take all of it. And certainly the remedial force. I was going to say, what about quantity based on hearsay testimony? Is there a Ninth Circuit case yet that has dealt with that? Or any other authority that you can point to that specifically deals with that issue? I'm not aware of a post Booker case that regards that issue, Your Honor, or a post Ammaline case. But I don't think it matters here because, and that's why in my brief I focused our argument on the testimony that was tried. You can disregard the hearsay people and still easily conclude that the court hasn't made clear error or abused its discretion in concluding that Ms. Saylor was completely believable. And I would strongly disagree with Ms. Smith when she suggests that the jury did not believe Ms. Saylor. I don't think there's any evidence for that whatsoever. They concluded, at least partly concluded, that there's insufficient evidence to find beyond a reasonable doubt that there was 500 grams of methamphetamine involved. But they also just as clearly came back and convicted him of drug distribution. Something Ms. Saylor said happened. And I would add they forfeited about $15,000 of the $16,000 plus that the United States sought to forfeit in this case, which was the pile of money that Mr. Cole handed over. When Ms. Smith argues that Ms. Saylor is not reliable, I don't think that's supported by the evidence at trial or the court's conclusion. And, of course, the other part to keep in mind is that this last transaction was captured on videotape, as well as audiotapes of Mr. Cole beforehand setting up the deal. Everything points to the district court's conclusion of a level 26 being an exceedingly reasonable conclusion, having taken off a chunk. Pardon me. I'm sorry? This is Judge Bea. On the transaction which was caught on videotape, what was the amount of the drugs involved there? Your Honor, that was one of the disputes at trial because the audiotapes capture Mr. Cole ordering for Ms. Saylor the usual. Mr. Cole has on his person $16,700-some, and so the transaction does not involve actual drugs. The police have put together approximately one pound, which is what Ms. Saylor says was the usual, of fake drugs. I think they used rock salt and put that in front of – and Ms. Saylor, during the transaction, put that in front of Mr. Cole. Mr. Cole handed the money over. Mr. Cole then testified that his usual was not in the pound-type quantities but was more along the lines of ounce-type and, therefore, personal use quantities. I think the jury did reject that amount, and I would suggest the jury found not 500 grams because that particular transaction was for one pound, according to Ms. Saylor, which is shy by about 50 or 60 grams of full 500 grams. So there's substantial evidence beyond Ms. Saylor's testimony, or at least there's substantial video and audio evidence that confirms what Ms. Saylor testified to, and I think it's error to suggest that the jury did not believe Ms. Saylor. Indeed, the verdict, and even if I concede or even if I would suggest that there's an error in the instruction where we added 500 grams to the elements as well as asked for a special verdict, there was no objection from the defendant with respect to that addition. It does not lessen the United States' burden but raises the United States' burden, and with that elements instruction, the jury still returned a guilty verdict. I would almost have an argument to suggest that they did find the 500 grams and their special verdict was an error. Of course, I'm not making that argument today, but I don't think you can conclude from any of that that Ms. Saylor was unbelievable or that there's insufficient evidence for the district court to have found the drug amount it did wholly absent the hearsay evidence that was, in fact, included in the pre-sentence report. I don't see a clock in front of me, so I'm not sure about my time. Once again, tell us what specific evidence there was from which the court could have found an amount less than 500 grams other than what Mr. Anderson and the other hearsay declarants said. Is that Ms. Saylor? From Ms. Saylor, that's correct, Your Honor. From Ms. Saylor and from the facts of the transaction itself. The facts of the transaction are that the agents hand over approximately one pound of fake drugs and Mr. Cole hands over money. Ms. Saylor also testified to many previous transactions, and I think the court would have been justified, although I'm glad I'm not arguing this issue today, justified by a preponderance of the evidence standard finding more than 500 grams. We would have an argument about preponderance of the evidence after Booker versus the jury's finding of insufficient evidence beyond a reasonable doubt. Of course, we don't have that argument, but between Ms. Saylor and the video and audio tapes, there's ample evidence to find, certainly to find less than 500 grams and maybe to find more. Anything further, Counsel? I don't have a clock. You have about 40 seconds. Nothing further, Your Honor. You have about 40 seconds. I have nothing further to add unless there are other questions. No further questions. Thank you, Counsel. Thank you, Your Honor. Ms. Smith, you have some reserved time. I'd like to first address one of the last points that Mr. Van Wettering made. He characterizes the audio tape as showing Mr. Cole handing money over to Ms. Saylor. That's a mischaracterization. What shows on the videotape is that Mr. Cole was sitting at a table, and he had cash in front of him, and he was looking through the cash. No money was ever handed to Ms. Saylor. And Mr. Cole testified that he had that money because it was cash from cars he had sold, and he was in the process of buying a home. The videotape is actually a red herring in this case because the United States dismissed the charges that had to do with the audio tape and the videotape, with the setup by. Those charges were dismissed. What the court had to rely on then is the testimony of Ms. Saylor, which the jury did not believe in Cole, because she testified she sold pounds and pounds of drugs to Mr. Cole. And the jury disagreed with her and specifically found that she did not sell him, or he did not possess, at least 500 grams. Also, her testimony was not clear about the amounts that she sold to Mr. Cole. She varied from time to time, saying she sold him one-half pounds to one pounds, and that that was the usual. Well, it can't be both. The usual is one thing. And Mr. Cole testified that the usual was one-half ounce, or one ounce that he bought for his own personal use. The problem with the second issue is that the district court sentenced Mr. Cole based on totally unreliable evidence. The people who gave those statements were not available in court. I had no opportunity to cross-examine them, to test their veracity. I didn't even have an opportunity to question the law enforcement officers who took their statements to see if they took the statements down correctly. And it's an abuse of discretion. It's a violation of Mr. Cole's constitutional rights. But does the Confrontation Clause apply at the sentencing level? Your Honor, under Booker, under the remedial portion of Booker, it may not. But even if it did, this Court stated in Ammaline, the second Ammaline case, that the district court cannot rely simply on factual allegations in the pre-sentence report. And that is what happened here. And as far as the insufficient evidence argument, Your Honor, they assumed the burden by putting it in the instruction and instructing the jury. They had to find that amount. We understand your argument on that point. Thank you. Counsel, your time has expired. The case just argued will be submitted for decision. And we will proceed to argument in the United States v. Lentz.
judges: O'scannlain, Graber, Bea